```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
QUAZI SHAFQAT HASSAN,

                    Plaintiff,

       - against -

ERIC HOLDER, Attorney General; JANET
NAPOLITANO, Secretary, Department of
Homeland Security, and MICHAEL AYTES,
Acting Deputy Director of U.S. Citizenship
and Immigration Services,[1]

                    Defendants.
------------------------------------------------------------ X
```

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JUL 28 2009 ★

BROOKLYN OFFICE

**MEMORANDUM DECISION AND ORDER**

CV-08-4870 (BMC)

**COGAN, District Judge**

This matter is before the Court on defendants' motion to dismiss or remand plaintiff's action. For the following reasons, the Court grants defendants' motion and dismisses plaintiff's petition.

On December 3, 2008, plaintiff filed a Petition for Hearing on Naturalization Application with this Court. Plaintiff asserted that defendant USCIS failed to adjudicate his naturalization application within the 120-day time period since his naturalization interview, as set forth in 8 U.S.C. § 1447(b), and he requested that this Court either (1) issue an order approving his naturalization application and directing USCIS to schedule an immediate swearing-in ceremony; or (2) issue an order declaring USCIS' failure to adjudicate plaintiff's

---

[1] Although plaintiff's petition named Michael Mukasey, Michael Chertoff, and Jonathan Scharfen as defendants, Fed. R. Civ. P. 25(d) provides that when a public officer ceases to hold office while an action is pending, "[t]he officer's successor is automatically substituted as a party" and "[l]ater proceedings should be in the substituted party's name."

naturalization application to be unlawful and requiring USCIS to accept and adjudicate the application.

At the Initial Status Conference in this matter, defendants' counsel informed the Court that USCIS had issued a decision denying plaintiff's naturalization application without prejudice on January 28, 2009. The decision stated that because plaintiff had been convicted of petit larceny in violation of Virginia law in April 2006 and given a suspended sentence of twelve months, conditioned on good behavior for three years, USCIS could not approve his application until after the conclusion of the three-year period (i.e., April 14, 2009). Although USCIS notified plaintiff that he had the right to administratively appeal the decision, plaintiff's counsel indicated at the Initial Status Conference that his client did not intend to file a request for an administrative hearing and instead desired to have this Court adjudicate his application for naturalization. According to plaintiff's counsel, once plaintiff filed his action in this Court, § 1447(b) vested this Court with the exclusive jurisdiction to hear his application and stripped USCIS of the authority to deny the application.

Defendants have moved to dismiss plaintiff's petition, arguing that USCIS' decision on plaintiff's naturalization application mooted his action, and that § 1447(b) does not deprive USCIS of the authority to adjudicate a naturalization application once an applicant files a petition in district court. In the alternative, defendants have asked that the Court remand the action to USCIS for expedited decision if it determines that plaintiff's action is not moot.

There is a split of authority on the issue of whether § 1447(b) provides the district courts with exclusive jurisdiction to decide a naturalization application once suit has been filed, and the Second Circuit has not definitively ruled on this issue. Compare, e.g., Etape v. Chertoff, 497 F.3d 379 (4th Cir. 2007) (finding § 1447(b) vests the district court with

2

exclusive jurisdiction); United States v. Hovsepian, 359 F.3d 1144 (9th Cir. 2004) (same); Zaranska v. U.S. Dep't of Homeland Sec., 400 F. Supp. 2d 500 (E.D.N.Y. 2005) (same); Frenkel v. United States Dep't of Homeland Sec., No. 07-cv-1145, 2007 WL 3090656 (D. Conn. Oct. 19, 2007) (same), with, e.g., Bustamante v. Chertoff, 533 F. Supp. 2d 373 (S.D.N.Y. 2008) (noting the Second Circuit has not addressed the question but finding Hovsepian unpersuasive and holding that the filing of a § 1447(b) action does not divest USCIS of jurisdiction); Bello-Camp v. Attorney General, No. 08-cv-885, 2009 WL 813146 (M.D. Fla. Mar. 26, 2009) (concluding USCIS retains concurrent jurisdiction after the filing of a § 1447(b) action); Xie v. Mukasey, 575 F. Supp. 2d 963 (E.D. Wisc. 2008) (same).

Having reviewed the authority on both sides of this issue, the Court is persuaded by the line of cases holding that the filing of a § 1447(b) action does not vest exclusive jurisdiction over the naturalization application in the district court. Section 1447(b) provides:

> If there is a failure to make a determination [by USCIS] . . . before the end of the 120-day period after the date on which the examination is conducted under [8 U.S.C. § 1446], the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to [USCIS] to determine the matter.

Although the statute states that the district court "has jurisdiction over the matter," it does not expressly provide that the district court has *exclusive* jurisdiction. See Bustamante, 533 F. Supp. 2d at 376-77 (citing United States v. Reich, 479 F.3d 179, 187 (2d Cir. 2007) ("In interpreting a statute, '[w]e start, as always, with the language of the statute.'")). This "leaves open the possibility that the agency retains concurrent jurisdiction over the 'matter' during the pendency of a § 1447(b) application." Id. at 377. The Court also agrees with Judge McMahon's analysis in Bustamante of the words "determine" and "remand," see id. at 377-

78, and concludes that this language does not evince a Congressional intent to strip USCIS of jurisdiction entirely once a § 1447(b) petition is filed.

The legislative history of § 1447(b) also does not suggest that Congress intended the statute to provide for exclusive jurisdiction in the district courts; indeed, the House Judiciary Committee proposed an exclusive jurisdiction amendment to the statute that was rejected by the full House of Representatives. Compare H.R. Rep. 101-187, at 5 (proposing the text, "Where there has been a failure to make a determination . . . the United States district court for the jurisdiction in which the applicant resides shall upon the demand of the petitioner exercise exclusive jurisdiction over the matter"), with 135 Cong. Rec. H4539-02, H 4541, 1989 WL 182156 (proposing amendment without the phrase "exclusive jurisdiction;" this amendment was passed by the House and ultimately incorporated into the statute).

Furthermore, reading § 1447(b) to strip USCIS of its naturalization authority is contrary to the purpose of the Immigration Act of 1990, which removed jurisdiction over naturalization applications from the district courts and placed "sole authority to naturalize persons" with the Attorney General to speed the processing of naturalization applications. See Chan v. Gantner, 464 F.3d 289, 290 (discussing legislative history of the Immigration Act of 1990); Bustamante, 533 F. Supp. 2d at 380 ("A ruling that divested [USCIS] of jurisdiction as soon as the applicant filed a section 1447(b) action would, in the real world, delay the processing of the application, thereby frustrating Congress' intent."); Bello-Camp, 2009 WL 813146, at *5 n.12 ("[I]t simply makes no sense to interpret a statute intended to speed up the process to mean that the administrative process must come to a grinding halt upon filing of a federal lawsuit.") (citing Fatayer v. Swacina, No. 07-cv-527, 2008 WL 4279688, at *3 (M.D. Fla. Sept. 15, 2008)).

4

Plaintiff has asserted that Brock v. Pierce County, 476 U.S. 253, 106 S.Ct. 1834 (1986), supports his position and mandates the conclusion that Congress intended to strip the agency of jurisdiction. In Brock, the Supreme Court analyzed statutory language providing that the Secretary of Labor "shall" issue a final determination as to the misuse of funds under the Comprehensive Employment and Training Act within 120 days after receiving a complaint alleging misuse; the Court concluded that this provision did not strip the Secretary of Labor of the authority to issue a determination after the 120-day period. Id. at 254-55, 259-60, 266.

According to plaintiff, Brock stands for the proposition that congressional intent to deprive an agency of jurisdiction can be presumed where the statute imposes a deadline on agency action and specifies a consequence for the agency's failure to act.[2] Plaintiff has contended that, unlike the statute at issue in Brock, § 1447(b) satisfies both of these conditions because the statute contains a 120-day time limit and provides a "consequence" for the failure to "comply with the deadline" (i.e., "placing jurisdiction over the naturalization application in the district courts"). However, as defendants have correctly asserted, § 1447(b) does not impose any deadline on USCIS; it merely provides that an applicant whose application is not adjudicated within 120 days may file an action in the district court, but does not state that USCIS "shall" or "must" act on an application within the specified time. See also Bustamante, 533 F. Supp. 2d at 380 (disagreeing with the Hovsepian Court's analysis of § 1447(b) under Brock). Likewise, § 1447(b) does not specify a consequence to agency inaction – it allows an applicant to file an action in federal court if the applicant so chooses, and it allows the federal court the choice between deciding the application or sending it back

---

[2] This is the same reading of Brock advocated by the Hovsepian and Zaranska Courts.

to the agency with instructions for adjudication. In short, as the Bustamante Court stated, "[a]ll that § 1447(b) does is give petitioner an alternative forum for an initial decision, as long as both he and the district court wish to take advantage of that alternative." 533 F. Supp. 2d at 381.

In any event, the Brock Court did not hold that a statute must be read to strip the agency of authority to act where the statute specifies a time period for action and the consequences of a failure to act. Instead, the Court stated that these requirements are based upon a line of Court of Appeals precedent which the Court has "never expressly adopted . . . [although] our decisions supply at least the underpinnings of those precedents." 476 U.S. at 259-60. The Brock Court's actual holding is different – the Court stated that unless there is an "indication in the statute or its legislative history that Congress intended to remove" an agency's authority to act after the expiration of a given time period, courts should not presume Congressional intent to deprive an agency of jurisdiction. Id. at 260, 266. Applying this standard to § 1447(b), the Court cannot conclude that Congress intended the district court to acquire exclusive jurisdiction over the application after either the expiration of the 120-day period or once a § 1447(b) application is filed in the district court. See Bustamante, 533 F. Supp. 2d at 381.[3] There is nothing in either the statute or its legislative history to suggest this result. The more appropriate reading of § 1447(b) is that Congress intended USCIS and the district court to exercise concurrent jurisdiction over the naturalization application.

---

[3] The Court must presume that Congress was aware of Brock's holding at the time it enacted the Immigration Act of 1990 and the amendments to § 1447(b). See Barnhart v. Peabody Coal Co., 537 U.S. 149, 160-61, 123 S.Ct. 748 (2003) (finding that a provision of the Coal Act did not strip the Social Security administration of the authority to make retiree assignments after a given period because, inter alia, "[t]he Coal Act was adopted six years after Brock came down, when Congress was presumably aware that we do not readily infer congressional intent to limit an agency's power to get a mandatory job done merely from a specification to act by a certain time").

Having concluded that USCIS retained jurisdiction to act on plaintiff's naturalization application after plaintiff filed his § 1447(b) petition, USCIS' January 28, 2009 denial of the application was a decision which mooted plaintiff's action in this Court. See, e.g., Bustamante, 533 F. Supp. 2d at 381. The Court therefore dismisses plaintiff's petition.

**SO ORDERED.**

/S/(BMC)
U.S.D.J.

Dated: Brooklyn, New York
July 27, 2009